**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---------------------------------------------------------

Joseph Antoine, as next friend   :
of Max D. Antoine, et. al.,     :
               :
   Plaintiff,       :    Civ. No.03-3738 (DRD)
               :
    v.        :
               :
Police Officer Phillip Rucker,   :    **O P I N I O N**
Police Officer Alfredo Aleman,   :
Police Officer Keith Stouch,    :
John and Janes Does, Police Chief  :
Daniel Russo, Mayor Sarah Bost,  :
the Irvington Police Dept.     :
and the Township of Irvington   :
               :
   Defendants.      :
               :

---------------------------------------------------------

Ronald L. Washington, Esq. (RLW1450)
Ronald L. Washington, L.L.C.
201 Bloomfield Avenue, #26
Verona, New Jersey 07044

*Attorney for Plaintiff*s

Jacob A. Papay, Jr., Esq. (JAP5832)
Gebhardt & Kiefer, P.C.
1318 Route 31
P.O. Box 4001
Clinton, New Jersey 08809

*Attorney for Defendants*

**DEBEVOISE, Senior District Judge**

## I. PROCEDURAL HISTORY

Plaintiffs, Joseph Antoine, as guardian of Max Anotine, Marie D. Antoine, individually and as guardian of Nelchael S. Antoine and Marie E. Antoine, initially filed their 23 page, 97 paragraph complaint against Officer Phillip Rucker, Officer Alfredo Aleman, Officer Keith Stouch, Chief Daniel Rosso, Mayor Sarah Boss, the Irvington Police Department, The Township of Irvington and the EMTAC Paramedic Ambulance on June 2, 1998 (the "First Complaint").

On March 14, 2003 a stipulation of dismissal without prejudice was entered by all parties with certain conditions "placed upon the record." The parties agreed that the suit could be refiled and that the Defendants would waive any statute of limitations defenses as to the claims initially brought in the First Complaint.

On August 7, 2003, the Plaintiffs filed a second complaint against the same Irvington Defendants[1], claiming that the Defendants' conduct violated Max Antoine's, Marie E. Antoine's, Marie D. Anotine's and Nelchael Antoine's rights "as guaranteed under 42 U.S.C. §1981, 1983, 1985 and the United States Constitution, including its First, Fourth and Fourteenth Amendments," and alleging various state law tort claims. Under their "First Claim," the Plaintiffs advance false arrest, false imprisonment, malicious prosecution, excessive force, and warrantless entry claims against Officers Rucker, Stouch and Aleman (the "Officers") under 42 U.S.C. §1983. Plaintiffs' "First Claim" also contains allegations of retaliation for Max Antoine's exercise of his First Amendment rights to free speech as well as a discrimination claim under 42

---

[1]Defendant EMTAC Paramedic Ambulance is not included in the second complaint.

U.S.C. §1981.  In their "Second Claim" Plaintiffs allege that the Officers deprived the Plaintiffs

of their Equal Protection rights and conspired to falsify and cover up the events of June 2, 1996.

The Compliant's "Third Claim" sets forth a <u>Monell</u> Claim for Constitutional Violations against

the Township of Irvington, Mayor Bost, the Irvington Police Department, and Police Chief

Daniel Russo (the "Municipal Defendants").  The "Fourth Claim" asserts "Respondeat Superior

Liability of the Township of Irvington and the Irvington Police Department for State Law

Violations."  The "Fifth Claim" asserts that Max Antoine was "falsely arrested."  The

Complaint's "Sixth" "Seventh" and "Eighth" Claims allege state law claims for false

imprisonment, assault and battery, and intentional and negligent infliction of emotional distress,

respectively.  The "Ninth Claim" is entitled "Conspiracy under State Law," but asserts that the

Officers "conspire[d] together and maliciously and willfully entered into a scheme to

deprive...[the Plaintiffs] of their rights, liberty, well-being and to commit the above-alleged

unlawful acts.  The acts and conduct of the defendants ... violated their rights as guaranteed by 42

U.S.C. §§ 1981, 1983, 1985 and by the United States Constitution, including its First, Fourth and

Fourteenth Amendments and violated their statutory and common law rights as guaranteed by the

laws and Constitution of the State of New Jersey."  The "Tenth Claim" is a loss of consortium

claim by Marie D. Antoine.  The "Eleventh Claim" asserts negligence by the Officers, and the

"Twelfth Claim" is a trespass claim by Marie E. Antoine.

Defendants now move for summary judgment on all claims.[2]

For the reasons set forth below, that motion will be granted in part and denied in part.

---

[2]Defendants do not address Plaintiffs' negligence (Eleventh Claim) claim specifically.  Therefore, the motion is one for partial summary judgment.

Specifically, the Court will grant summary judgment on all of Nelchael Antoine's claims and

claims on her behalf.  Likewise, all of Marie D. Antoine's and Marie E. Antoine's claims will be

dismissed with prejudice.  Summary judgment will also be granted on Max Antoine's malicious

prosecution claim, First Amendment retaliation claim, conspiracy claims under state and federal

law, and his Monell and Respondeat Superior claims.  Summary judgment will be denied as to

Max Antoine's false arrest and false imprisonment claims under federal and state law (First and

Fifth Claims), race discrimination claim (First and Second Claims), excessive force claim under

federal law, and his assault and battery claims under state law.  Finally, Defendants' motion to

dismiss all of Joseph Antoine's claims will be granted, with Max Antoine continuing in his stead

as plaintiff.

## II.  BACKGROUND

On June 2, 1996, about 2:30 a.m.,[3] Police Officers Philip Rucker, Alfredo Aleman, and

Keith Stouch arrived at 208 Nesbit Terrace, Township of Irvington, New Jersey.  The Officers

were responding to a noise complaint involving a "party."  Indeed, Plaintiffs Max Antoine

("Antoine"), Marie D. Antoine ("Marie D."), Marie E. Antoine ("Marie E.") and Nelchael

Antoine ("Nelchael"), along with several of their family and friends, were celebrating Marie E.'s

birthday in her second floor apartment at the said location.  (Pls.' Ex. 1, at 37).

According to the Plaintiffs, the Officers were initially met outside the home by Jean

Marie Blaise, a co-resident at Marie E.'s apartment.  Id. at 55.  The Officers asked Mr. Blaise to

turn the music down, and he went back into the apartment and told the disc jockey to turn the

---

[3] The police report is dated June 2, 1996, but since it was 2:30 a.m., the correct date would have been June 3, 1996.

music off, which he did.  Id.  Moments thereafter, however, Defendants Rucker, Aleman and

Stouch entered Marie E.'s apartment with their night sticks drawn, and, using profanity, ordered

the guests to leave the party.  Id. at 64.

As the guests began to leave the party, the Officers were allegedly met by Marie E., who

protested their entry and treatment of her guests.  Id. at 39.  Antoine and his wife, Marie D.,

joined Marie E.'s protest.  Id.  Antoine did not communicate directly with the Officers, but

advised Marie E. to refrain from speaking with the Officers and instructed her to note their badge

numbers so that Antoine could help her file a complaint in the morning.  (Pls.' Ex. 13, at 86-87).

Upon hearing this, Officer Rucker "lunged" toward Antoine--knocking down six-month pregnant

Marie E. in the process--, grabbed him by the throat, and slammed his head against the wall.

(Pls.' Ex. 1, at 65).  Officers Aleman and Stouch joined in the assault, and while beating Antoine

about the head and body with their batons, brought him down to the floor, dragged him out into

the hallway, and handcuffed him. (Pls.' Ex. 13, at 97-98).  Officer Rucker was heard saying:  "I'll

teach you American law."  Id.

After handcuffing him, the Officers allegedly dragged Antoine out of the apartment and

down the stairs.  Id. at 95.  As they exited the building, the Officers used Max Antoine's head to

bang open the storm doors and it broke the glass.  Id. at 65.  Once Antoine was placed in the

patrol car, Officer Aleman sprayed Antoine's face with pepper spray. (Pls.' Ex. 13, at 105-106).

Although Antoine generally denies having touched, threatened, or resisted the Police Officers, at

his Pretrial Intervention (PTI) hearing he admitted that the he resisted the Officers' actions.

(Pls.' Ex. 58, at 7).  However, Antoine denies that the Officers ever told him that he was under

arrest, and maintains that the Officers continued to punch him at the police station.  (Pls.' Ex. 13,

5

at 110).

After being released the next afternoon, Antoine went into St. Barnabas Hospital. Antoine walked out of St. Barnabas at around midnight, after being treated for minor cuts and bruises.  (Pls.' Ex. 18).  A few hours later, Antoine visited the Meadowlands Hospital Medical Center seeking further treatment.  Id.  Antoine complained of lower back pain, pain in his arms and knees, loss of hearing in his left ear, and discomfort in his left eye.  Id.  After examining Antoine, Meadowlands Hospital discharged him with a cervical collar.  (Pls.' Ex. 18).

Antoine returned to Meadowlands Hospital on subsequent occasions seeking treatment for his "post-traumatic" injuries, including lower back pain, and underwent a series of pain management treatments relating to his back.  (Pls.' Ex. 25-38).  Between July 1996 and March 2000, Antoine sought numerous medical exams and procedures from various hospitals. (Pl's Ex. 44).

Marie E. later testified that after the incident she had a stomach ache and began "spotting" (vaginal bleeding).  (Pls.' Ex. 52, at 11).  She was taken to Beth Israel Hospital, which found no injuries or complications, and released her.  Id.  Marie D. stated that she fell down during the scuffle between Officer Rucker and Antoine, and that she visited her personal physician sometime after the incident, although she did not report any injuries. (Pls.' Ex. 52, at 11).

According to Officer Rucker, he and Stouch arrived at 208 Nesbitt Terrace, and were first met by Antoine.  (Def.'s Stmt. of Mat. Facts, ¶16).  Antoine  informed the Officers that his sister (Marie E.) was having a party.  (Pls.' Ex. 46).  Accompanied by Antoine, the officers proceeded

to the second floor of the building, where the music was coming from.  Id.  Once upstairs,

Officers Rucker and Stouch encountered Jean Marie Blaise, who identified himself as the co-

occupant of the second floor apartment.  Id.   The Officers informed Blaise that they were

responding to a loud music call, and directed Mr. Blaise to turn down the music.  (Pls.' Ex. 53, at

6).  While the Officers were waiting for Blaise to return, the music grew louder, and the Officers

could hear the crowd stomping their feet and chanting "f*** the police."  Id.  The landlord

appeared from the first floor apartment and asked the Officers to end the party.  Id.  Mr. Blaise

then came out from the apartment with Antoine, stating that he could not stop the party.  (Pls.'

Ex. 46).  Officer Rucker informed Mr. Blaise that he was in violation of the Township Ordinance

for loud music.  Id.

      The Officers state that they then entered the apartment over Antoine's objection.  The

Officers observed that the apartment was filled with an estimated 150 people, dancing, drinking

and socializing.  (Pls.' Ex. 53, at 8).  The Officers announced that the party was over and started

to disperse the crowd.  Id.  Some of the guests began leaving without incident, but Antoine was

still protesting the Officers' warrantless entry.  Id.  A pregnant woman (later identified as Marie

E.) also came forward and asked "what is going on here, this is my party."  (Pls.' Ex.46).  As

Officer Rucker spoke with Marie E., Antoine confronted Officer Rucker again, yelling, "I'm a

law student.  I know the law.  Get the f*** out of here now."  (Pls.' Ex. 46).  As Antoine

approached, Officer Rucker put his hand up to stop Max Antoine from getting in his face.  (Pls.'

Ex. 53, at 9).  Antoine then grabbed Officer Rucker's service weapon and began pulling it

towards him, and the two men struggled for the gun.  Id.  Officers Aleman and Stouch came to

Officer Rucker's aid, and advised Antoine that he was under arrest.  Id. at 10.  The four men

were pushed out into the hallway as Antoine kicked, pushed, and flared his arms to avoid being handcuffed.  Id. at 11.  Officer Rucker then sprayed Antoine with mace, which brought Antoine under control.  Id.  The Officers Stouch and Aleman testified that Antoine continued to struggle as he was being led away, and broke the storm door window while attempting to head butt the Officers.  (Pls.' Ex. 46, at 2).

At the precinct, Antoine was examined by the EMTAC paramedics.  (Pls.' Exhibit. 14).  The paramedics found him standing in his jail cell.  Id.  They took his vitals, which were normal, and flushed his eyes with sterile water.  (Pls.' Ex. 15).  The paramedics also treated a small cut in his mouth, and left the precinct once Antoine refused further medical attention and signed a release form.  Id.  Antoine was released from police custody at around 3 p.m. the next day, on June 3, 1996.

In response to Antoine's allegations of police brutality, the Essex County Prosecutor's Office conducted an investigation.  (Defs.' Ex. D).  The County Prosecutor ("Investigator") interviewed the Officers, Plaintiffs, and witnesses.  Upon reviewing the records, the Investigator found that some of Antoine's medical evidence was falsified.  (Defs.' Ex. I).  Unable to reconcile the different witness accounts, however, the Investigator recommended that the matter be submitted to the Essex County Grand Jury.

Following a full hearing wherein the parties and witnesses testified, the Grand Jury indicted Antoine on second degree disarming a law enforcement officer, fourth degree aggravated assault, fourth degree resisting arrest, fourth degree false representation to law enforcement authorities, fourth degree false swearing, fourth degree falsifying or tampering with records, and fourth degree false tampering with evidence.  (Defs.' Ex. G).

After some plea bargaining, Antoine was allowed to enroll in the Pretrial Intervention Program pursuant to N.J.S.A. 2C:43-12 on the condition that he admit to resisting arrest at the plea hearing.  (Pls.' Ex. 58).  Antoine accepted the plea and his criminal case was dismissed on December 9, 1999, and the state court ordered the record expunged on July 22, 2002.  (Pls.' Ex. 59).

### III.  STANDARD OF REVIEW

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party,"  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the nonmoving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting, Anderson, 477 U.S. at 255).  But where the nonmoving party bears the burden of persuasion at trial, "the burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (U.S. 1986).

### IV.  DISCUSSION

9

As an initial matter, Plaintiffs agree that all of Nelchael Antoine's claims (and claims on her behalf) should be dismissed.  Therefore, all of Nelchael Antoine's claims will be dismissed.

Also as a threshold matter, Defendants argue that Max Antoine's claims should be dismissed because he is not a named plaintiff in the complaint but is represented only through his father, Joseph Antoine, who lacks standing in the case.  Indeed, the caption reads: "Joseph Antoine, as next friend of Max Antoine," and Max Antoine is not named as a plaintiff. Defendants also point to the fact that Max Antoine is not a minor.  Plaintiffs contend that this designation was proper because Max Antoine was mentally incapacitated at the time of filing the original complaint.  (Pls.' Aff. in Opp'n., ¶2).

In Whitmore v. Arkansas, the Supreme Court examined the issue of whether a "next friend" may pursue a cause of action in federal court on behalf of a detained person.  Witmore v. Arkansas, 495 U.S. 124, 164, 110 S.Ct. 1717, 1728, 109 L.Ed.2d 135.  The Court held that the "next friend" standing in federal court must be conditioned upon (1) a significant relationship between the putative "next friend" and the real party in interest, and (2) "a showing by the proposed 'next friend' that the real party in interest is unable to litigate his own cause due to mental incapacity, lack of access to court, or other similar disability."  Id. at 164-165, 110 S.Ct. 1727-1729.  Here, the issue was whether Max Antoine was capable of making "knowing and intelligent" decisions affecting his case.  Id. at 165.  Although Joseph Antoine had not demonstrated Max Antoine's inability to bring this action on his own behalf, Defendants have equally failed to point to the lack of evidence in this regard.  Since Defendants did not dispute that Max Antoine had standing to sue under §1983, Joseph Antoine, as "next friend" also had standing under §1983.  At this time, however, Plaintiffs assert that "it would appear that there is

10

no legal need to continue Joseph Antoine as 'next friend' of Max Antoine in this matter." (Pls.' Br., at 1). Therefore, Joseph Antoine will be dismissed from the case and Max Antoine will continue as a plaintiff.

### A. The "First Claim"

Plaintiffs' "First Claim" consists of the following claims against the Officers: (1) Marie E.'s warrantless entry claim under §1983; (2) false arrest claim by Max Antoine under §1983; (3) malicious prosecution claim by Max Antoine under §1983; (4) Marie E.s', Marie D.'s, Nelchael's and Antoine's false imprisonment claims under §1983; (5) Marie E.s', Marie D.'s, Nelchael's and Antoine's racial discrimination claims under 42 U.S.C. §1981 and §1983 (Equal Protection); (6) Max Antoine's First Amendment retaliation claim; and (7) Marie D.'s, Marie E.'s and Antoine's excessive force (assault) claims. As discussed below, summary judgment on this "First Claim" will be granted in part and denied in part.

#### 1. *Marie E.'s Warrantless Entry Claim.*

Marie E. claims that the Officers violated her Fourth Amendment right by forcibly entering her apartment "without legal justification nor consent." Complaint, ¶25. Defendants assert that the Officers' warrantless entry was justified because they were performing a "community caretaking function" - i.e., abating a nuisance. Although the parties agree that the police may enter a home without a warrant to abate a nuisance, they disagree on whether a nuisance existed at the time of the Officers' entry into the home. The Officers claim that they entered the apartment because, despite their request to Jean Marie Blaise to turn down the music, the music only grew louder and the crowd started to stomp their feet, chanting, "f*** the police."

11

The Plaintiffs' witnesses testified that the Officers entered the apartment shortly after the music was turned off.

Despite the factual disputes, however, the Defendants argue that the Officers are entitled to qualified immunity for this claim.   Whether the Defendants are entitled to qualified immunity in a §1983 case is a two-part inquiry.  First, the court must determine whether the Defendants' conduct violated a constitutional right.  Mantz v. Chain, 239 F.Supp.2d 486, 495 (D.N.J. 2002). Second, if the violation is properly alleged, the court must proceed to determine whether the right asserted was "clearly established" at the time of the Officers' allegedly unlawful conduct.  Id.  In order to determine if the law was clearly established, the Court must examine "whether the state of the law at the time the violation occurred" gave defendants "fair warning that their alleged treatment of the plaintiff was unconstitutional."  Hope v. Pelzer, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).

Here, the Plaintiffs assert that, under the "community caretaking doctrine," the Officers had no right to enter the home after the music had been turned off.  However, there was no "clearly established" law at the time of the entry specifically instructing the Officers to stop in their tracks while responding to a noise call if, noticing the Officers' approach, the occupants of the home abated the nuisance.  See generally, Anderson v. Creighton, 483 U.S. 635 (1987) (requiring specificity with respect to the right allegedly violated).

Moreover, it was 3:00 a.m. and the disc jockey was still playing when the Officers entered the building.  The crowd remained on the premises after the music was purportedly turned off.  Thus, the party arguably continued after the music was turned off.  Under the circumstances, it would not have been clear to a reasonable officer that entry into the apartment

12

was unlawful.  The qualified immunity doctrine "operates to grant officers immunity for reasonable mistakes as to the legality of their actions."  <u>Saucier</u>, 533 U.S. at 206.  Therefore, the Court will grant summary judgment on this claim as a matter of law.

### 2.  False Arrest

In the "First Claim," Antoine alleges that he was arrested without probable cause, in violation of his rights under the Fourth Amendment.[4]  To prevail on his claim of false arrest, Antoine must prove at trial that he was arrested by a state actor without probable cause.[5]  <u>See</u> <u>Mantz</u>, 239 F.Supp.2d at 497.  Probable cause to arrest exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  <u>Id.</u>

Here, the focus is on what triggered the arrest.  According to Officers Rucker and Aleman, Antoine was placed under arrest when Max Antoine grabbed Officer Rucker's service handgun and holster and began pulling it towards him. The police subsequently charged Max Antoine with, <i>inter alia</i>, aggravated assault and "disarming a law enforcement officer."  In his deposition, however, Max Antoine firmly denied that he ever touched Officer Rucker let alone attempted to grab the Officer's weapon.  (Pls.' Ex. 13, at 91).  Plaintiffs' witnesses also testified that Officer Rucker first grabbed Max Antoine upon hearing him instruct Marie E. to write down the Officers' badge numbers.  (Pls.' Ex. 1, at 65).  Should the jury believe the Plaintiffs' version of the events, the Officers lacked probable cause to arrest Max Antoine for aggravated assault

---

[4]Antoine's false arrest and false imprisonment under state law will be discussed in Section D, below.

[5]Same standard applies to false imprisonment.  <u>See, e.g.</u>, <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 636 (3d Cir. 1995).

and "disarming a law enforcement officer."  Because there is a factual dispute over the existence

of probable cause, Antoine's false arrest and false imprisonment claims under §1983 must

survive summary judgment.

Nonetheless, Defendants contend that they are entitled to qualified immunity from suit

because their conduct did not violate Antoine's constitutional rights that were reasonably known

to exist.  Under the doctrine of qualified immunity, government officials performing

discretionary functions are generally "shielded from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct.

2727, 73 L.Ed.2d 396 (1982).  However, although the objective reasonableness of an officer's

conduct and the existence of a clear established right are questions of law, any disputes as to the

underlying facts nonetheless remain a question for the jury.  See Curly v. Klem, 298 F.3d 271,

278 (3d Cir. 2002); see also Mantz, 239 F.Supp.2d at 495-496.  Here, the objective

reasonableness of the Officers' conduct against Antoine cannot be decided without first sorting

out the circumstances of Antoine's arrest.  Accordingly, summary judgment for the Officers

against Antoine based on qualified immunity is not appropriate.

### 3.  False Imprisonment

As discussed above, factual issues regarding Antoine's arrest prevent summary dismissal

of Antoine's false arrest claim.  Inasmuch as the false imprisonment claim is coextensive with

Antoine's false arrest claim, the same factual issues that prevent summary judgment on

Antoine's false arrest claim prevent summary judgement on his false imprisonment claim.

14

Nonetheless, Plaintiffs concede that neither Marie E. nor Marie D. can sustain their false imprisonment claims because neither woman was arrested or detained against her will. (Pls.' Br. in Opp'n., at 28). Moreover, Plaintiffs agree that all claims by Nelchael Antoine should be dismissed. Id.

Accordingly, summary judgment for defendant Officers will be granted on Marie E.'s, Nelchael's and Marie D.'s false imprisonment claims, but denied on Antoine's false imprisonment claim.

### 4. *Malicious Prosecution*

Defendants next move to dismiss Antoine's §1983 malicious prosecution claim. Defendants argue that this claim should be dismissed because Antoine cannot make the requisite showing that the criminal action was terminated in his favor. In order to establish either a §1983 action for malicious prosecution or a state tort claim based on that same cause of action, Antoine must prove that the government brought an action against him without reasonable or probable cause, that it was actuated by malice, and that the proceedings at issue terminated in his favor. Lindes v. Sutter, 621 F.Supp. 1197, 1200 (D.N.J. 1985). Further, a successful completion of pretrial intervention under New Jersey statutes, resulting in the dismissal of the indictment, is not termination of prosecution favorable to the accused for purposes of either a civil rights action for malicious prosecution or a state tort claim based on that same cause of action. Id.

Here, Antoine concedes that he cannot demonstrate that his criminal case terminated in his favor. Further, no charges were filed against Marie E. and Marie D. Therefore, summary judgment is granted on Plaintiffs' malicious prosecution claim.

15

**5.** *Plaintiffs' Discrimination Claim under 42 U.S.C.§1981 and §1983*[6]

Plaintiffs' First Claim alleges that the Officers' actions were "motivated by race and/or nationality-based, invidiously discriminatory animus," in violation of 42 U.S.C. §1981 and the Fourteenth Amendment Equal Protection Clause.[7]

42 U.S.C. §1981 provides: "All persons ... shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." To prevail under §1981, Plaintiffs must demonstrate that the Officers' actions were motivated by purposeful racial discrimination.  See, General Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982).  Specifically, Plaintiffs must show: "(1) that [they] belong to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in §1981." Pryor v. NCAA, 288 F.3d 548, 569 (3d Cir. 2002).  Fourteenth Amendment denial of Equal Protection and selective enforcement claims also require a similar showing of purposeful discrimination.  See, e.g.,  Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); Batson v. Kentucky, 476 U.S. 79, 93, 106 S.Ct. 1712, 1721, 90 L.Ed.2d 69, 85 (1986).

Here, Plaintiffs are Haitian or of Haitian descent.  Thus, there is no question as to the first

---

[6]The Court will not address whether Marie E. and Marie D. have proper standing on this claim since Defendants have not raised the issue.

[7]In their "Second Claim" Plaintiffs contend that they were injured as a result of Defendant Officers' failure to "take any steps to protect [Plaintiffs] from the unjustified and unconstitutional treatment they were receiving at the hands of the defendants."  The Court will consider this claim as a denial of protection or selective enforcement claim based on the Fourteenth Amendment.

element.  Regarding the second element, although there are conflicting witness accounts, Antoine identified himself as a law student to the Officers and protested their warrantless entry. (Pls.' Ex. 52, at 2).  He also instructed Marie E. Antoine, his sister, to write down the officers' badge numbers so that he could file a complaint against them in the morning.  Id. at 9.  According to witness testimony, this agitated Officer Rucker, who then grabbed Antoine by the throat and started to beat on him. (Pls.' Ex., at 65).  The other Officers joined in the beating.  Marie E. and Marie D. testified that they heard Officer Rucker saying: "I'll teach you *American* law."  Id. at 40, 65.  If believed as true, the Officer Rucker's statement could sustain the inference that the arrest, battery and illegal entry had a discriminatory animus as against Antoine and his family.

Defendants argue that the Plaintiffs have no evidence from which a reasonable jury could conclude that Plaintiffs were subject to discriminatory treatment.  According to the Defendants, this requires a showing that the Police Officers treated similarly situated non-Haitians differently. 42 U.S.C. §1981, however, does not require this showing.  See generally, General Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375 (1982).  Rather, Plaintiffs need only make a showing that they were injured as a result of Defendants' "purposeful discrimination." Id. at 391. Here, Officer Rucker's statement that Antoine had to be taught "*American* law" implicates race or national origin discrimination.

Finally, as to the third element, if the beating was indeed motivated by racial animus and without probable cause, Plaintiffs might be able to prove that there was disparate treatment in "punishment, pains and penalties," 42 U.S.C. 1981, and selective discrimination in the enforcement of laws, the inference being that no warrantless entry, battery or arrest would have occurred had the Plaintiffs been of some other race or ethnicity.

17

Since the testimony, when viewed in the light most favorable to Plaintiffs creates a genuine issue of material fact with respect to the Officers' intent, Plaintiffs' §1981 and Equal Protection claims must survive summary judgment.

### 6.  *First Amendment Claim*

Antoine's First Amendment claim is untimely.[8]  Civil rights claims brought under §1983 are governed by New Jersey's two-year statute of limitations.  See Cito v. Bridgewater Twp. Police Dpt., 892 F.2d 23, 24 (3d Cir. 1989).  Furthermore, actions grounded on violation of §1983 based upon police action toward criminal suspects, such as search and seizure, arrest and interrogation, are "presumed to have accrued when the action actually occurs." Johnson v. Johnson County Comm'd Bd., 925 F.2d 1299, 1301 (10th Cir. 1991).   Assuming that Antoine's speech qualified as "protected speech,"  the alleged retaliation–battery and arrest–occurred on June 2, 1996.  Inasmuch as Antoine's retaliation claim accrued on June 2, 1996, the Court will dismiss this claim as a matter of law.

### 7.  *Excessive Force Claim*

#### i. Max Antoine

The "First Claim" of Plaintiffs' complaint asserts that the police officers' use of force against Max Antoine violated his Fourth Amendment rights.  Summary judgment on this issue must be denied.

Although police officers may use force to effect an arrest, the use of force must be

---

[8]Antoine's First Amendment retaliation claim was not asserted in the First Complaint, and therefore outside the scope of its stipulated dismissal.

reasonable under the circumstances.  See Mantz, 239 F.Supp.2d at 498.  The "reasonableness" of

the force used against a plaintiff depends on "the facts and circumstance of each particular case,

including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to

the safety of the officers or others, and whether he [was] actively resisting or attempting to evade

arrest by flight."  Id. (quoting Graham v. Conner, 490 U.S. 386, 396-97, 109 S.Ct. 19865, 104

L.Ed.2d 443  (1989)).  Further, courts must consider the particular circumstances of the arrest,

mindful of the fact that police officers are often forced to make split second judgment in tense,

uncertain and rapidly evolving circumstances about the amount of force necessary in a particular

situation.  See Graham, 490 U.S. at 396-97.  And if the officer's use of force is reasonable, his

motivation is irrelevant.  See id. at 397 ("An officer's evil intentions will not make a Fourth

Amendment violation out of an objectively reasonable use of force…").  In addition, " 'not every

push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates

the Fourth Amendment."  Id. at 396-397 (quoting Johnson v. Glick, 481 F.2d 1028, 1033, cert.

denied 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

        If the evidence is considered in the light most favorable to Plaintiffs, a reasonable jury

could conclude that the Officers' use of force against Antoine was unwarranted and excessive

under the circumstances.  Various witnesses have testified at the Grand Jury hearing that Officer

Rucker, without provocation, grabbed Antoine by the throat, bashed his head against the wall,

while the other Officers administered repeated blows with their fists, feet, and night sticks on

Antoine's head and torso. (Pls.' Ex. 1, at 65).  Antoine maintains that the Officers' conduct was

completely unprovoked, other than his directing his sister to write down their badge numbers.

(Pls.' Ex. 13, at 89).  Thus, there is an issue of fact as to whether the use of force was even

19

necessary, as there was no probable cause to arrest Antoine.

Even if there was probable cause to arrest, there is also an unresolved factual issue as to whether and to what extent Antoine resisted arrest. Although Antoine admitted that he "resisted" arrest, a jury could also conclude that bashing Antoine's head against the storm doors while carrying him out, or spraying him with mace after Antoine was handcuffed and seated in the police vehicle, was excessive.

That Antoine "resisted" arrest and falsified some of the medical records concerning his injuries does not resolve the factual dispute regarding the circumstances of his arrest. The falsification of records may affect Antoine's credibility as a witness, but it does not nullify his excessive force claim. And although relevant, permanent or serious injury is neither a requirement nor a dispositive factor in an excessive force claim under §1983. See generally, Molton v Cleveland, 839 F2d 240 (6th Cir. 1988). Moreover, there is admissible evidence, such as the EMT report and other hospital records, which tend to indicate that Antoine may have sustained some injuries during the arrest.

Because the evidence, taken in the light most favorable to Antoine, could support a reasonable jury finding that the police officers' actions were "objectively unreasonable," the Defendants' motion for summary judgment on Antoine's excessive force claim will be denied.

### *ii. Marie D. Antoine's and Marie E. Antoine's Excessive Force Claims*

Marie D. and Marie E. point to no evidence which support their excessive force claim under §1983. Section 1983 permits suits against government officials for violation of rights guaranteed by the Constitution or federal laws. 42 U.S.C. § 1983. Therefore, the analysis begins

by identifying the specific constitutional right allegedly infringed by the challenged application

of force." Graham, 490 U.S. 386, 394; see also Saucier v. Katz, 533 U.S. 194 (2001) (instructing

the courts in §1983 cases to first consider whether there was a constitutional violation).

Typically, an excessive force claim under §1983 would involve infringement of "either the

Fourth Amendment prohibition against unreasonable seizures of person or the Eight

Amendments ban on cruel and unusual punishments." Id. A "seizure" within the meaning of the

Fourth Amendment occurs only when government actors have, "by means of physical force or

show of authority, …in some way restrained the liberty of a citizen." Id. at 395 n.10.

In this case, the Plaintiffs' have produced testimony that Officer Rucker pushed Marie D.

and Marie E. out of the way as he moved toward Max Antoine. (Pls.' Ex. 1, at 65).   However,

there is no evidence which suggests that deliberate force was used to "seize" Marie D. or Marie

E. within the meaning of the Fourth Amendment.  In fact, Marie D and Marie E admit that they

cannot demonstrate that they were arrested or detained against their will. (Pls.' Br. in Opp'n., at

28).  In addition, the record indicates that the second floor apartment was filled with people, and

that the "pushing" was merely accidental and not purposeful toward Marie D. and Marie E.

Moreover, the "force" used against Marie D. and Marie E., if any, was minimal at best, as

evidenced by the lack of injury.   Inasmuch as Plaintiffs fail to allege that any of *their*

Constitutional rights were infringed because of the Officers' alleged pushing, Marie E.'s and

Marie D.'s §1983 excessive force claims will be dismissed as a matter of law.

### B.       Conspiracy (Second and Ninth Claims)

Plaintiffs' Second and Ninth Claims essentially allege that the Officers first conspired to

deprive Antoine of his First, Fourth, and Fourteenth Amendment rights, and later conspired to "cover-up" that illegal conduct by filing false charges against Antoine and making false reports and statements to their supervisors and investigators.  Specifically, in their Second Claim, the Plaintiffs allege that the Defendant Officers injured Plaintiffs by "conspiring to falsify and fabricate an account surrounding the false arrest of Max Antoine...and in conspiring to cover-up the injuries caused by the assault on Max Antoine."  The Ninth Claim of the pending complaint asserts that Defendants "conspired together and maliciously and willfully entered into a scheme to deprive [Plaintiffs] of their rights, liberty, well-being and to commit the [alleged] unlawful acts."

The parties concede that these claims were not asserted in the First Complaint, and that, either as a §1983 claim or as a state law claim in tort, they are governed by New Jersey's two-year statute of limitations applicable to personal injury torts, N.J.S.A. 2A:14-2.  See Cito v. Bridgewater Twp. Police Dpt., 892 F.2d 23, 24 (3d Cir. 1989) (holding that New Jersey's two-year statute of limitations applies to civil rights claims brought under §1983 and §1985).  The parties also agree that a conspiracy claim under §1985 accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action."  Singleton v. City of New York, 632 F.2d 185, 194-195 (2d Cir. 1980), cert denied, 450 U.S. 920, 101 S.Ct. 368, 67 L.Ed.2d 347 (1981).  In addition, the parties concede that actions grounded on violation of §1983 based upon police action toward criminal suspects, such as search and seizure, arrest and interrogation, are "presumed to have accrued when the action actually occurs." Johnson v. Johnson County Comm'd Bd., 925 F.2d 1299, 1301 (10th Cir. 1991).

Defendants assert that the action accrued on June 2, 1996, when the arrest actually

occurred.  However, Plaintiffs contend that any conspiracy began on that date but "theoretically continued" until Max Antoine's record was expunged by Order of July 22, 2002.

Plaintiffs' conspiracy claims are time barred.  There is no indication that the Officers maintained a conspiracy that continued for six years.  Even if Plaintiffs could establish that the Officers conspired to deprive Max Antoine's civil rights on June 2, 1996, Plaintiffs cannot make a showing that the deprivation of those rights continued after July 1997, when the Officers testified in front of the Grand Jury in connection with Max Antoine's indictment.  Max Antoine was released from police custody on June 3, 1996, and his indictment and court proceedings comported with his due process rights.  Indeed, Plaintiffs were not impeded from telling their side of the story or from exposing the extent of his injuries to the Grand Jury and the courts. Moreover, as the Plaintiffs so fervently point out, the Officers have produced varying accounts of the June 2, 1996 events.  Rather than support the inference of a conspiracy to falsify, conflicting accounts in the Officers' statements negate the inference that the Officers "agreed" to lie regarding the June 2, 1996 incident.  Thus, Plaintiffs' conjectural "continuing enterprise" theory cannot prevent summary judgment, and Plaintiffs' Second and Ninth Claims will be dismissed as a matter of law.

### C. Government Liability under Federal and State Law

#### 1. *Monell Claim (Third Claim)*

In their Complaint, Plaintiffs allege that the Township of Irvington, "acting through defendants Bost, Russo, Rucker, Aleman, Stouch and Does, had in effect explicit orders, as well as de facto polices, practices and customs that were a direct and proximate cause of the

unconstitutional conduct of the defendant police officers."  Plaintiffs further allege that the

Township, Mayor Bost, the Irvington Police Department, and Chief Russo ("municipal

defendants"), deliberately failed to act despite being  "on notice" regarding the Officers' and

other employees' propensity to engage in unlawful and/or unreasonable behavior or otherwise

"violate the civil and constitutional rights of the public, such as the conduct complained of by

[Plaintiffs]."   To hold a municipality liable under 42 U.S.C. §1983, plaintiffs must show that a

constitutional offense resulted from an express municipal policy, a widespread custom, or the act

of a decisionmaker with final policymaking authority.  Monell v. Department of Social Services,

436 U.S. 658, 694 (1978).  Ordinarily, one incident is not sufficient to establish a custom that can

give rise to municipal liability.  Groman, 47 F.3d at 637.  Rather, Plaintiffs need to establish that

responsible officials were aware of a number of similar constitutional violations by Irvington

police and knew of ways to prevent them, but "either deliberately chose not to pursue these

alternatives or acquiesced in a longstanding policy or custom of inaction in this regard."

Simmons v. Philadelphia, 947 F.2d 1042, 1064 (3d Cir. 1991).  The burden of proof is on the

Plaintiffs.  Here, Plaintiffs point to no evidence that could meet that burden.  Bare bones

allegations in the Complaint are insufficient to withstand summary judgment.

   Plaintiffs also claim that they were injured as a result of the municipal defendants' failure

to train its police officers, and that such failure demonstrates the Municipal Defendants'

"deliberate indifference to the constitutional rights of those with whom the officers may come

into contact."   To establish liability on a failure to train claim under § 1983, a plaintiff "must

identify a failure to provide specific training that has a causal nexus with [his] injuries and must

demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate

indifference to whether the alleged constitutional deprivations occurred." Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir.1997).  Plaintiffs failed to make this showing.  The only evidence produced on this issue is Officer Rucker's deposition testimony in which he testified to having received annual training since he joined the Irvington Police Department. (Rucker Dep., at 7).  Plaintiffs did not offer contrary evidence.  Accordingly, the Municipal Defendants are entitled to summary judgment on his failure to train claim.

Therefore, all claims for liability against the Township of Irvington, the Irvington Police Department, the Mayor and the Police Chief under 42 U.S.C. §1983 will be dismissed.

### 2.   *Respondeat Superior (Fourth Claim)*

Plaintiffs also assert that the Township and the Police Department are liable to the plaintiffs "pursuant to the state common law doctrine of *respondeat superior*" because the actions of Rucker, Aleman and Stouch occurred while they were "on duty and in uniform, and/or in and during the course and scope of their duties and functions as police officers..."

Pursuant to N.J.S.A. 59:8-9, "in no event may any suit against a public entity or public employee arising under this act be filed later than two years from the time of the accrual of the claim."  Since the incident occurred on June 2, 1996, this cause of action had to be brought by June 2, 1998.  Although Plaintiffs filed their first complaint on June 2, 1998, that complaint did not include a state law claim against the municipal defendants.  Therefore, Plaintiffs' "Fourth Claim" is barred by N.J.S.A. 59:8-9.

### D.  Related State Law Claims

### 1.   *False Arrest (Fifth Claim)*

Defendants argue that Antoine' false arrest claim should be dismissed because the Officers had probable cause to arrest Antoine.  As mentioned, however, whether or not the Officers had probable cause is disputed by the record.  Plaintiffs contend that Antoine's speech and the Officers' racial animus were the only basis for the arrest.  Construing the record in favor of Antoine, then, a reasonable jury could conclude that Antoine's arrest was unjustified.

Moreover, while resisting arrest can justify the use of force in effecting the arrest, it cannot be a "cause" for the arrest.  Thus, although Antoine admitted to resisting arrest, lacking probable cause to arrest, the Defendants cannot claim immunity under state law.  Therefore, summary judgment will be denied on this "Fifth Claim."

### 2.   *False Imprisonment (Sixth Claim)*

For the same reasons stated in subsection 1 above, there is a material issue of fact with respect to the legality of Antoine's arrest and detention.  However, Plaintiffs concede that neither Marie E. nor Marie D. can sustain their false imprisonment claims because neither woman was arrested or detained against their will.  (Pls.' Br. in Opp'n., at 28).  Plaintiffs further concede that neither Marie E. nor Marie D. can overcome the threshold requirement of N.J.S.A. 59:9-2(d)[9] because they cannot demonstrate damages in excess of $3,600 or a permanent injury as a result of Defendant's actions.  Id.  Accordingly, Defendants' motion for summary judgment on Plaintiffs'

---

[9] N.J.S.A. 59:9-2(d) states:

No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $ 3,600.00. For purposes of this section medical treatment expenses are defined as the reasonable value of services rendered for necessary surgical, medical and dental treatment of the claimant for such injury, sickness or disease, including prosthetic devices and ambulance, hospital or professional nursing service.

Sixth Claim will be granted as against Marie D. and Marie E., but denied as against Antoine.

### 3. Assault and Battery (Seventh Claim)

When effecting an arrest, a police officer may use such force as is reasonably necessary under the circumstances.  Mantz, 239 F.Supp.2d at 507.  A police officer can be held liable for assault and battery if he uses excessive force.  Id.  Here, the record contains several disputed issues of fact with regard to the circumstances surrounding Antoine's arrest and the extent to which he resisted arrest.  Without resolving these issues, the Defendants' objective reasonableness in their use of force against Antoine cannot be ascertained.  Therefore, summary judgment is inappropriate on this claim as against Antoine.

Nonetheless, Plaintiffs concede that neither Marie E. nor Marie D. can overcome the threshold requirement of N.J.S.A. 59:9-2(d) because they cannot demonstrate damages in excess of $3,600 or a permanent injury as a result of Defendant's actions.  (Pls.' Br. in Opp'n., at 28).  Accordingly, Defendants' motion for summary judgment on Marie D.'s and Marie E.'s assault and battery claims are granted.

### 4. Intentional and Negligent Infliction of Emotional Distress (Eighth Claim)

Antoine's claim for intentional and negligent infliction of emotional distress must fail because the Officers' actions as described by Plaintiffs did not amount to "outrageous" conduct, and because Antoine failed to point to specific evidence of severe emotional injury.  To prevail on a claim of intentional infliction of emotional distress ("IIED"), a plaintiff must prove that the defendant's conduct was so "outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." Obendorfer v. Gitano Group, Inc., 838 F.Supp. 950, 955 (D.N.J. 1993) (citing Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 544 A.2d 857 (1988)). Furthermore, "the act must be done with the intent to do the act and to produce the emotional distress, or a deliberate disregard of high probability that emotional distress will follow." Id. Finally, the plaintiff must be able to demonstrate causation and resulting emotional distress that is "so severe that no reasonable [person] could be expected to endure it." Buckley, 111 N.J. at 366.

Indeed, "outrageous conduct" is only found in the most extreme circumstances. See, e.g., Hume v. Bayer, 178 N.J. Super. 301, 428 (Law Div. 1981) (physician knowing it to be false, telling parents that their son was suffering from cancer); Muniz v. United Hsops. Med. Ctr. Presbyterian Hosp., 153 N.J. Super. 79 (App. Div. 1977) (hospital unable to locate the body of a deceased baby for three weeks). Other examples intentional infliction of emotional distress include: "spreading a false rumor that plaintiff's son had hung himself; bringing a mob to plaintiff's door with a threat to lynch him if he did not leave town; and wrapping up a gory dead rat inside of a loaf of bread for a sensitive person to open." Hume, 178 N.J. Super at 315. Similarly, a claim for negligent infliction of emotional distress requires outrageous conduct. Green v. City of Patterson, 971 F.Supp. 891, 911-912 (D.N.J. 1997).

In this case, Antoine alleges that the Officers beat him without provocation and arrested him without probable cause, all in retaliation for exercising his Free Speech rights and because he was of Haitian origin. Even if true, these allegations do not rise to the level of conduct described above. Further, racial undertones are not all that uncommon in physical altercations. Thus, the Court cannot find that the Officers conduct, as alleged, amount to conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency."

Moreover, Antoine has failed to point to specific facts which could establish emotional distress so severe "that no reasonable man could be expected to endure." <u>Green</u>, 971 F.Supp at 911. Accordingly, Defendants' motion for summary judgment on Antoine's intentional and negligent infliction of emotional distress claims will be granted.

In addition, Plaintiffs concede that neither Marie E. nor Marie D. can overcome the threshold requirement of N.J.S.A. 59:9-2(d). (Pls.' Br. in Opp'n., at 28). Therefore, Nelchael's, Marie E.'s and Marie D.'s claims for intentional and negligent infliction of emotional distress will also be dismissed as a matter of law.

### 5.  *Loss of Consortium (Tenth Claim)*

Marie D. and Nelchael allege that they have been deprived of the "services, companionship and society" of Antoine as a result of Defendants' actions against Antoine. As mentioned above, however, Marie D's state law claims against the Defendants are barred by N.J.S.A. 59:9-2(d). Plaintiffs also agree that all of Nelchael's claims and claims on her behalf should be dismissed. Therefore, Defendants' motion for summary judgment on Plaintiffs' Tenth Claim will be granted.

### 6.  *Negligence (Eleventh Claim)*

Plaintiffs allege that the Officers' actions negligently caused injuries and emotional distress. Although Defendants moved for summary judgment on all claims, they did not address this claim directly. The Court will grant dismissal in so far as Marie E., Marie D., and Nelchael cannot meet the threshold requirements of N.J.S.A. 59:9-2(d), but will deny dismissal as to

Antoine.

### 7. Trespass (Twelfth Claim)

In Plaintiffs' Twelfth Claim, Marie E alleges that the Defendants "willfully wrongfully

and unlawfully trespassed upon her home." In their brief, Plaintiffs concede that Marie E.'s

claim for trespass is barred by N.J.S.A. 59:9-2(d) because she cannot demonstrate damages in

excess of $3,600, or a permanent injury as a result of Defendant's actions.[10] (Defendant' Brief in

Opp., at 28). Because Marie E. failed to present any evidence that could satisfy N.J.S.A. 59:9-

2(d), her trespass claim will be dismissed as a matter of law.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion for summary judgment is granted in part

and denied in part. Specifically, the Court will grant summary judgment on all of Nelchael

Antoine's claims and claims on her behalf. Likewise, all of Marie D. Antoine's and Marie E.

Antoine's claims will be dismissed with prejudice. Summary judgment will also be granted on

Max Antoine's malicious prosecution claim, First Amendment retaliation claim, conspiracy

claims under state and federal law, and his <u>Monell</u> and Respondeat Superior claims. Summary

judgment will be denied as to Max Antoine's false arrest and false imprisonment claims under

federal and state law (First and Fifth Claims), race discrimination claim (First and Second

Claims), excessive force claim under federal law, and his assault and battery claims under state

law. Finally, Defendants' motion to dismiss all of Joseph Antoine's claims will be granted, with

Max Antoine continuing in his stead as plaintiff.

---

[10]However, later in their brief Plaintiffs argue that Marie E.'s trespass claim should survive summary judgment based on the Officers' alleged illegal entry.

As a result of this disposition of Defendants' motion the only defendants remaining in this case are Officers Phillip Rucker, Alfredo Aleman and Keith Stouch, and the only claims to be tried against these Officers are Max Antoine's (1) false arrest and false imprisonment claims under federal and state law, (2) §1981 and §1983 Equal Protection claims, (3) federal excessive force claims, (4) assault and battery claim under state law, and (5) state law negligence claim.

                                        **  /s/ Dickinson R. Debevoise              **
                                        DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: July 11, 2006